OPINION
{¶ 1} Laura B. Shirdon appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of Don Houston on her personal injury claim.
 {¶ 2} The following facts are undisputed. Don Houston, age 72, and his son, Ron Houston, age 47, reside in Tribune, Kansas. Ron has been diagnosed with a manic-depressive disorder and allegedly receives Social Security Disability. Ron has not been adjudicated incompetent, nor has Don been appointed as his legal guardian.
 {¶ 3} Ron and Don are both members of the Amateur Trapshooting Association ("ATA") and visited the Dayton area in August 2003 for an ATA event. During this visit, they went to a Kroger store in Vandalia so that Ron could purchase some personal items. Ron entered the store while Don waited in the parking lot. As Ron was exiting the store through a door designated as an entrance, he ran into an elderly woman, Laura Shirdon, and knocked her down. Shirdon suffered a broken leg and required extensive rehabilitation from this injury.
 {¶ 4} Shirdon filed a complaint against Don on August 14, 2003, and an amended complaint against Ron and Don on January 15, 2004. The amended complaint sought to recover from Ron for recklessly or negligently "committ[ing] a civil assault" upon her and from Don for reckless or negligent supervision of Ron. On April 9, 2004, Don filed a motion for summary judgment. Shirdon opposed the motion and requested a continuance to conduct additional discovery. The trial court ordered that Don's motion for summary judgment would be submitted for decision on April 30, 2004 and implicitly denied the request for a continuance. The trial court subsequently granted Don's motion for summary judgment on June 30, 2004. Shirdon filed a motion for reconsideration, which was denied.
 {¶ 5} On November 9, 2004, Shirdon filed a motion for partial summary judgment against Ron on the issue of liability. In response, Ron asserted that Shirdon's self-serving affidavit was insufficient to warrant summary judgment, but he did not present any evidence of the type permitted by Civ.R. 56(C). The trial court granted partial summary judgment, limited to the issue of liability, in favor of Shirdon and against Ron. The matter was referred to a magistrate for a determination of damages, whereupon the parties stipulated to Shirdon's medical expenses and other damages, and judgment was entered against Ron in the amount of $473,608.73.
 {¶ 6} Shirdon appeals from the summary judgment in favor of Don Houston, raising three assignments of error. The first two assignments are related, and we will consider them together.
 {¶ 7} I. "THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO GRANT APPELLANT'S MOTION FOR A CONTINUANCE TO CONDUCT DISCOVERY PURSUANT TO CIV.R. 56(F)."
 {¶ 8} II. "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE AGAINST APPELLANT WHEN GENUINE ISSUES OF MATERIAL FACT EXISTED SO AS TO PRECLUDE SUMMARY JUDGMENT."
 {¶ 9} Shirdon contends that the trial court erred in granting summary judgment in favor of Don Houston and in failing to give her more time to conduct discovery.
 {¶ 10} The decision whether to grant a continuance pursuant to Civ.R. 56(F) rests within the sound discretion of the trial court. Clark Cty. Solid Waste Mgmt. Dist. v. Danis ClarkcoLandfill Co. (1996), 109 Ohio App.3d 19, 38, 671 N.E.2d 1034; Civ.R. 56(F). A party seeking a Civ.R. 56(F) continuance has the burden of establishing a factual basis and reasons why the party cannot present sufficient documentary evidence without a continuance. Glimcher v. Reinhorn (1991), 68 Ohio App.3d 131,138, 587 N.E.2d 462, quoting Gates Mills Investment Co. v.Pepper Pike (1978), 59 Ohio App.2d 155, 169, 392 N.E.2d 1316;Galland v. Meridia Health System, Inc., Summit App. No. 21763,2004-Ohio-1416, ¶ 6.
 {¶ 11} In support of her request for a continuance, Shirdon relied on the affidavit of her attorney, which detailed "the facts [she] intended to collect and present to the trial court, which would have conclusively shown the existence of a genuine issue of material fact." In large part, this affidavit recounted conversations that Shirdon's attorney, Dwight Brannon, had allegedly had with Don Houston's attorney in Kansas.
 {¶ 12} In his affidavit, Brannon stated that Don's attorney had provided him with the following information: 1) Ron lived in a trailer behind Don's house; 2) Ron had never held employment and had been "under the care, direction and control of Don Houston all of his life"; 3) on many occasions, often related to the failure to take medication, Ron had become "violent, disruptive, assaultive, and uncontrollable"; 4) Ron had been barred from "virtually every business" in Tribune, Kansas; 5) "Don Houston or local law enforcement has placed Ron in a state mental hospital on numerous occasions"; 6) Ron was committed to a mental hospital after his return from Ohio in 2003; and 7) "everyone in Tribune, Kansas, is aware of Ron Houston's dangerous tendencies and failure to take his medication," including his father.
 {¶ 13} Brannon also stated by affidavit that his own investigations had revealed that police officers and Kroger officials described Ron as being very combative, confused, and troubled and that Don Houston had removed his son from the ATA event that they were attending in Dayton at the time of Shirdon's injury because of his "confrontational and combative" behavior. Again, no affidavits from the police officers or Kroger officials were provided. Shirdon did provide written statements from two people at the ATA event, but neither was in the form of an affidavit as required by Civ.R. 56(C) and (E). The text of these statements does not identify in any way the man whose conduct is described. Moreover, both statements contain the notation, "Re: Don Houston," at the top, which appears to have been added by someone other than the person making the statement. To the extent that these identifications of the subject were entitled to any consideration whatsoever, they would seem to implicate Don, rather than Ron, in the disruptive behavior at the ATA event.
 {¶ 14} Shirdon claims that the information contained in these documents detailed the precise information that she would obtain during the continuance and provided a sufficient basis for granting the continuance. She also points out that counsel needed to travel to Kansas to conduct some of the discovery. She provides no explanation, however, for her failure to submit any
evidence of the type allowed by Civ.R. 56(C) by the time of the summary judgment deadline, more than eight months after the filing of her initial complaint. Pointing out the issues about which one hopes to gather additional evidence is not a substitute for explaining why no steps had been taken to gather that evidence within the time that was already provided.
 {¶ 15} Under the circumstances presented, we cannot conclude that the trial court abused its discretion in refusing to grant a continuance. Shirdon pointed out the issues about which she hoped to gather additional evidence, but she did not explain why no steps had been taken to gather such evidence within the time that had already elapsed. While depositions might have required counsel to make a trip to Kansas, the court could have reasonably concluded that proper affidavits, answers to interrogatories, and other evidence admissible pursuant to Civ.R. 56(C) could have been obtained without making such a trip. More importantly, for the reasons discussed below, the trial court properly concluded that Shirdon would not have been entitled to summary judgment even if she had gathered evidence supporting the allegations in her attorney's affidavit. In other words, even if Shirdon had offered evidence on all of the points addressed in her attorney's affidavit, she would have failed to establish a duty on Don's part to control Ron's behavior or any breach of such a duty.
 {¶ 16} Our review of the trial court's decision to grant summary judgment is de novo. Helton v. Scioto Cty. Bd. ofCommrs. (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State exrel. Grady v. State Emp. Relations Bd., 78 Ohio St.3d 181, 183,1997-Ohio-221, 677 N.E.2d. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264. If the moving party satisfies its initial burden, "the nonmoving party then has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id.; see Civ.R. 56(E).
 {¶ 17} First, we turn to the issue of duty. There is no duty under Ohio law to control the conduct of another person so as to prevent him from causing physical harm to another unless a "special relation" exists between the actor and that person which imposes a duty upon the actor to control the person's conduct.Littleton v. Good Samaritan Hosp. and Health Ctr. (1988),39 Ohio St.3d 86, 92, 529 N.E.2d 449. Shirdon claims that such a "special relation" existed between Don and Ron and that Don had a duty to protect others from Ron because he knew Ron was "likely to cause bodily harm to others." To support this assertion, she relies upon Littleton and the Restatement of the Law, Second, Torts (1965) 122, Section 315. These authorities stand for the proposition that a special relationship exists "when one takes charge of a person whom he knows or should know is likely to cause bodily harm to others if not controlled." Littleton,39 Ohio St.3d at 92. Littleton dealt with a psychiatrist/patient relationship, but Shirdon asserts that a parent/child relationship also falls into this category, citing cases from other states. See Estate of Mathes v. Ireland (Ind.App. 1981),419 N.E.2d 782; Rausch v. McVeigh (1980), 431 N.Y.S.2d 887.
 {¶ 18} While the relationship between a parent and an adult child may, under certain circumstances, be a "special relationship" that instills in the parent a duty to protect others from the violent propensities of the adult child, such a relationship does not exist automatically by virtue of the parent-child relationship itself. Rather, it is our view that such a responsibility exists only if the parent has accepted such responsibility in a legally recognized way, such as a guardianship, or in a situation where an adult child's dependence and the parent's overt acceptance of responsibility for the adult child establish a de facto guardianship. In other words, "the premise upon which the sought-for duty rests is not any familial relationship of the parties. It depends instead upon the actualassumption of care and control of one known to be dangerous." (Emphasis added.) Mathes' Estate, 419 N.E.2d at 784.
 {¶ 19} Even if the assertions in Shirdon's attorney's affidavit could be established, they would not create a genuine issue of material fact that a special relationship existed requiring Don to protect others from Ron's actions. Don's alleged knowledge of Ron's disruptive behavior on prior occasions and of Ron's past failures to take his medication certainly did not create any legal duty on Don's part. The bare assertion that Ron lived "under [Don's] care, direction and control" is insufficient to establish a "special relation," especially where both parties agreed that Ron lived in a separate dwelling and Don stated that Ron lived "independently." Likewise, the facts that Ron received Social Security Disability and had allegedly spent time in a mental hospital might be interpreted to suggest some degree of mental instability, but they do not establish that Don had affirmatively accepted responsibility for Ron's care. Shirdon does not allege that Ron was involuntarily committed or that any guardianship existed. Indeed, Don stated by affidavit that Ron had "never been adjudicated incompetent" and that he (Don) had never been appointed or assumed the role of Ron's guardian. These statements were unrefuted. Thus, in our view, Shirdon's assertions, even if substantiated, failed to create a genuine issue of material fact that Don had a "special relation" with Ron that made him legally responsible for Ron's actions.
 {¶ 20} Next, we turn to the alleged breach of a duty to supervise Ron. Even if we were to assume, for the sake of argument, that Don had a duty to supervise Ron, we would be compelled to conclude that there was no genuine issue of material fact that Don had breached that duty. Shirdon did not claim that Ron had intentionally bumped into her at the store. As such, she was required to create a genuine issue of material fact that Don should have foreseen Ron's negligent or reckless conduct in exiting the store through a door intended to serve as an entrance and should have foreseen that an injury could result from such conduct.
 {¶ 21} Don admitted by affidavit that Ron had been diagnosed as manic-depressive and had been prescribed medication for that condition. Shirdon's attorney's affidavit stated that Ron had become violent or disruptive on many occasions when he failed to take his medication, but Shirdon did not offer any evidence that Ron had been off of his medication at the time of her injury. Shirdon did not present evidence about the symptoms of manic-depression or the effect of a failure to take medication that would be prescribed for it. She also did not refute Don's averment that, to the best of his knowledge, Ron had been taking his medication consistently when the men traveled to Ohio. Shirdon attempted to link Ron's alleged "violent" behavior with his manic depression, but she provided no medical basis for doing so.
 {¶ 22} Further, Shirdon failed to establish that Ron even engaged in disruptive behavior. Although the witnesses to the alleged events at the store were presumably local Kroger employees and law enforcement officers, no affidavits were presented from any of these individuals to substantiate the nature of Ron's conduct at the time of Shirdon's injury. Moreover, as we pointed out supra, the witness statements offered related to the disruption at the ATA event failed to identify Ron as the person who had caused the disturbances there.
 {¶ 23} Because the evidence discussed in Shirdon's attorney's affidavit would have been insufficient to create a genuine issue of material fact as to a duty owed by Don or a breach of that duty, even if additional time had been provided to substantiate those allegations, the trial court did not err in granting summary judgment.
 {¶ 24} The first and second assignments of error are overruled.
 {¶ 25} III. THE TRIAL COURT ERRED BY RULING THAT THE JUNE 30, 2004 DECISION, ORDER AND ENTRY WAS A FINAL, APPEALABLE ORDER AND THUS REFUSING TO CONSIDER APPELLANT'S MOTION FOR RECONSIDERATION."
 {¶ 26} Shirdon claims that the trial court erred in concluding that it could not address her motion for reconsideration, filed on August 2, 2004, and in suggesting that she file an appeal instead, because the order granting summary judgment in favor of Don was not a final appealable order.
 {¶ 27} We agree with Shirdon that the trial court's decision of June 30, 2004, granting summary judgment in favor of Don was not a final appealable order because the claims against Ron were still pending and the order did not include Civ.R. 54(B) certification. As such, the trial court retained the authority to modify that decision, if it had been so inclined, until such time as a final appealable order had been entered. Thus, Shirdon makes a valid point when she asserts that the trial court could have
considered her motion for reconsideration. The court had no obligation to do so, however. Furthermore, Shirdon's motion for reconsideration did not contain any additional documentary evidence regarding the issues decided on summary judgment. Thus, although the trial court misunderstood its authority to address the motion for reconsideration, Shirdon was not prejudiced by the court's not ruling on it.
 {¶ 28} The third assignment of error is overruled.
 {¶ 29} The judgment of the trial court will be affirmed.
Brogan, J. and Fain, J., concur.