{¶ 90} While I concur with the majority's finding that there was no error in the grant of summary judgment in favor of the parents on the claim of intentional infliction of emotional distress and with the finding that there was no error in the grant of summary judgment in favor of "Buddy" on Ms. Frederic's claims as they sounded in battery and were filed beyond the one year statute of limitations, I must respectfully dissent from the balance of the opinion.
 {¶ 91} After a de novo review, I agree with the trial court that the Civ. R. 56(C) evidence presented, taken in the best light for Ms. Frederic and her daughter, has failed to establish that a "special relation" existed between the Willoughbys and their adult son sufficient to impose liability upon the Willoughbys for his tortuous conduct.
 {¶ 92} The majority's analysis of the issue of duty owed to the victims in this case is flawed because it is incomplete. The majority rests its analysis upon the foundation of the Second District's decision in Shirdon v. Houston, 2d Dist. No. 21529, 2006-Ohio-4521, which extended the "special relation" concept to a parent and adult child. TheShirdon court found that a "special relation" exists "* * * only if the parent has accepted such responsibility in a legally recognized way, such as a guardianship, or in a situation where an adult child's dependence and the parent's overt acceptance of responsibility for the adult child establish a de facto guardianship." Id. at ¶ 18. The critical omission in the majority's analysis was the linchpin of theShirdon case. The court described what it meant by a de facto guardianship as follows: "* * * the premise upon which the sought- *Page 22 
for duty rests is not any familial relationship of the parties. It depends instead upon the actual assumption of care and control of one known to be dangerous." Id. (Citation omitted.) In other words, there must be evidence in the record that the parents actually took charge of their adult son. See Morgan v. Fairfield Family Counseling Ctr (1997),77 Ohio St. 3d 284, 299, citing 2 Restatement of the Law 2d, Torts Section 319, 314.
 {¶ 93} It was not until after the criminal proceeding associated with this case that the Willoughby's son, Buddy, was adjudicated incompetent. His parents were never appointed by the probate court as his guardian. Thus, one must review the facts presented to determine whether there was indeed a de facto guardianship.
 {¶ 94} Analyzing the evidentiary materials in the manner set forth by the court in Shirdon, I find striking similarities between the two cases. At the outset, I find, as the Shirdon court did, that a "bare assertion" that the son lived under the parents' care, direction and control is insufficient to establish a "special relation." To survive summary judgment, the facts must demonstrate that there is a genuine issue of material fact as to "actual assumption of care andcontrol." Reliance upon the affidavit of Buddy's second wife, Sandy, is misplaced as it is devoid of evidence of the WIlloughbys' actual control over their son.
 {¶ 95} Just as in Shirdon, the fact that the Willoughbys had some knowledge of their son's past sexual criminal conduct and his past failure to take his medication did not create any legal duty on the part of his parents. There is no evidence in the record that the parents ever assumed the care and control of his medical/psychological treatment outside of driving him on occasion to an appointment. There is no evidence that the parents were made a part of his treatment plan or had any input or control over any treatment. Just as in Shirdon, the facts that the son lived on Social Security *Page 23 
disability and had been seen by a counselor do not establish that the parents had affirmatively accepted responsibility for their son's care. In fact, the evidence before the court established that Buddy married twice, obtained disability benefits independently from his parents, purchased a car independently of his parents and his second wife, and thereafter drove it himself, made the payments on the vehicle and visited his in-laws and friends' homes, all independently from his parents. Furthermore, Buddy paid his parents rent to live with his second wife in a separately entranced basement apartment in the Willoughby home. Most importantly, although there is evidence that his parents made attempts to monitor Buddy's comings and goings, there is no evidence in the record that they actually controlled where he went, with whom he travelled, and by what means. His car was never taken away nor were his funds removed from his control. He was not locked in the house at night.
 {¶ 96} The facts that the parents disciplined Buddy and even paid for him to be sterilized establish that this was a dysfunctional family with issues on many different levels, but they do not present a genuine issue of material fact as to whether the Willoughbys had a "special relation" with Buddy any more than such facts would establish that Buddy's second wife, Sandy, had such a "special relation" with Buddy even though Sandy and Buddy were still married and living together next door to the victims at the time of the crime.
 {¶ 97} Further, I concur with the trial court's characterization of the statements made by the parents to Ms. Frederic after the first incident as "nothing more than gratuitous expressions of remorse" rather than statements establishing an assumption of duty to protect Ms. Frederic.
 {¶ 98} Thus, I would affirm the judgment of the trial court in toto. *Page 1