[Cite as *J&B Fleet Indus. Supply, Inc. v. Miller*, 2011-Ohio-3165.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

J&B FLEET INDUSTRIAL SUPPLY, INC.,)
            )  CASE NO.  09 MA 173
   PLAINTIFF-APPELLANT,  )
            )
   - VS -       )  OPINION
            )
RICK MILLER,       )
            )
   DEFENDANT-APPELLEE.  )

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from Common Pleas Court, Case No. 08 CV 1591. |
| | |
| JUDGMENT: | Affirmed. |
| | |
| APPEARANCES: | |
| For Plaintiff-Appellant: | Attorney Kenneth Cardinal<br>758 North 15th Street<br>P.O. Box 207<br>Sebring, OH  44672 |
| | |
| For Defendant-Appellee: | Attorney Dennis Haines<br>Attorney Charles Oldfield<br>Green, Haines, Sgambati, Co., LPA<br>16 Wick Avenue, Suite 400<br>Youngstown, OH  44501-0849 |

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated:  June 16, 2011

DeGenaro, J.

**{¶1}** Plaintiff-Appellant, J&B Fleet Industrial Supply, Inc. appeals the decision of the Mahoning County Court of Common Pleas overruling objections to a magistrate's decision and granting summary judgment in favor of Defendant-Appellee, Rick Miller in a suit for breach of contract, injunctive relief and fraud. J&B argues the trial court erred by concluding that J&B's contract-based claims against Miller were discharged in bankruptcy and by improperly limiting discovery. Finally, J&B argues there were genuine issues of material fact precluding summary judgment on its fraud claim, and that it pleaded the fraud claim with sufficient particularity. For the following reasons, J&B's assignments of error are meritless, and accordingly, the judgment of the trial court is affirmed.

### Facts and Procedural History

**{¶2}** J&B is a corporation that supplies sundry products to commercial and industrial markets. Miller was employed by J&B as a sales agent. Prior to that, Miller worked in sales and marketing for J&B's competitors, where he gained expertise in the industry.

**{¶3}** On March 23, 2003, Miller and J&B entered into an "Independent Sales and Marketing Agreement" which had a stated term of twenty years. Among other things, Miller agreed to terminate his employment relationship with J&B and instead become an independent distributor. J&B agreed to permit Miller to use the J&B logo, signage, catalogs, and business accounts for banking purposes. J&B agreed to extend to Miller a $10,000.00 line of credit, which was secured by Miller's "funded account," the retainage held by J&B from Miller's sales commissions when Miller was employed as a J&B sales agent. The Agreement also contained a non-compete clause which purported to limit Miller's right to compete with J&B for the duration of the contract and for an additional 20 years. The non-compete clause allowed J&B to conduct business in 87 out of 88 of Ohio's counties. It provided Miller with exclusive rights only to Franklin County, but permitted J&B to retain some existing customers. The non-compete clause further prohibited Miller from competing with J&B in 56 Ohio counties, including Stark, where Miller resides, and counties surrounding Stark.

{¶4}   On November 18, 2003, Miller filed a Chapter 7 bankruptcy petition, and on April 7, 2004, was granted a no-asset discharge.

{¶5}   According to Miller, he informed J&B owner and president Louis W. diDonato[1] about his bankruptcy filing.  Miller also averred he had discussions with diDonato about the bankruptcy, both before he filed, and during the course of the bankruptcy proceedings.  diDonato admitted that he was aware of Miller's financial problems, stating:  "Miller did inform me that he was or would be seeking a divorce and he had debts.  He expressed that he may have to file bankruptcy to rid himself of marital and personal debts. I cannot recall if he told me before March or after March, 2003."

{¶6}   Following Miller's bankruptcy discharge, Miller continued to perform his obligations under the Agreement.  Miller did not notify J&B of the discharge.  However, Miller never entered into a reaffirmation agreement with J&B.

{¶7}   J&B filed a complaint against Miller for breach of contract and injunctive relief. J&B claimed that Miller breached the non-compete clause by conducting business in competition with J&B in areas prohibited by the Agreement.  J&B requested that Miller be enjoined from continuing to breach the non-compete clause and prayed for damages for the breach.  J&B attached an affidavit from diDonato in support of the request for an injunction.

{¶8}   Miller answered and counterclaimed for fraud and breach of contract. Specifically, Miller claimed that J&B had committed fraud by failing to disclose all of its accounts as provided in the Agreement, and that Miller had relied on J&B's alleged misrepresentations and had been damaged therefrom.  Miller also alleged that J&B had breached the non-compete clause by competing with Miller in Franklin County in contravention of the Agreement.  Miler also requested an injunction prohibiting J&B from breaching the non-compete.

{¶9}   In an August 5, 2008 decision, the magistrate issued a preliminary injunction, preventing both parties from breaching the non-compete clause.  No objections were filed and the trial court adopted the decision.

---

[1] The record reveals diDonato uses his middle name, William, and also Bill.

{¶10} On January 13, 2009, Miller, having retained new counsel, filed a motion for leave to amend his answer and stay discovery. Specifically, Miller sought to add the affirmative defense of discharge in bankruptcy. Further, Miller moved the court to stay discovery as he intended to file a dispositive motion on the basis of the bankruptcy discharge defense and was concerned if discovery continued on other matters J&B could gain information about Miller's business operations that could give J&B a competitive advantage over Miller.

{¶11} On March 18, 2009, the magistrate issued an order granting both parties leave to amend their pleadings. The magistrate set deadlines for filing summary judgment motions. Finally, the magistrate ruled that pending a ruling on the motion for summary judgment discovery is stayed except relating to: (1) Miller's affirmative defense of discharge in bankruptcy; (2) J&B's contention that a contract between the parties existed after the bankruptcy; and (3) violations of the court's previous orders.

{¶12} J&B never moved to set aside this order. Instead, despite the directives of that order, on March 20, 2009, J&B filed a motion to compel discovery. As noted in the record, this motion was improperly served on Miller's prior counsel. The trial court never ruled on the motion to compel.

{¶13} On March 27, 2009, the magistrate issued an amended magistrate's order, which was substantially the same as the March 18 order, except that it corrected misidentification of the parties and errors with dates. J&B never moved to set aside this order.

{¶14} On March 26, 2009, Miller filed an amended answer and counterclaim, in which he added the affirmative defense of discharge in bankruptcy. On April 10, 2009, J&B filed an amended complaint which added claims for fraud and estoppel, in addition to the claims for breach of contract and injunctive relief. Miller filed an answer to the amended complaint.

{¶15} Miller filed a motion for summary judgment on April 24, 2009 with regard to J&B's claims against him, arguing J&B's claims for breach of contract and injunctive relief had been discharged in bankruptcy. Alternatively, Miller argued that the non-compete

clause is unreasonable and should not be enforced. Finally, Miller argued there were no genuine issues of material fact with regards to J&B's fraud claim. Attached to Miller's motion were his affidavit and two exhibits, the Agreement and his discharge order from the bankruptcy court.

**{¶16}** J&B filed a brief in opposition raising four arguments. First, J&B argued that its breach of contract and injunctive relief claims could not be barred by the bankruptcy discharge because Miller had waived the use of that defense by counterclaiming for breach of contract. Second, its claim for injunctive relief is non-dischargeable as it was a separate and distinct remedy under the Agreement which arose post-bankruptcy. Third, the non-compete clause was reasonable, and that the law cited by Miller with regard to the non-compete was inapplicable because the covenant was not made in an employment context. Fourth, there were genuine issues of material fact remaining regarding its fraud claim. J&B attached seven exhibits, five of which were pleadings contained in the record. The other two were an affidavit from diDonato and a copy of the Agreement.

**{¶17}** On June 12, 2009, the magistrate issued a two-sentence decision granting summary judgment against J&B for all of its claims against Miller. J&B filed a request for findings of fact and conclusions of law. Miller filed a motion to strike that request, claiming that findings of fact and conclusions of law are inappropriate where litigation has been terminated by summary judgment. The magistrate overruled Miller's motion to strike and ordered Miller to submit proposed findings of fact and conclusions of law.

**{¶18}** On August 11, 2009, the magistrate issued a lengthier decision concluding that the bankruptcy discharge barred the claims for breach of contract and injunctive relief, and even if the claims were not barred, the non-compete was unreasonable and unenforceable. Finally, the magistrate found there were no genuine issues of material fact regarding the fraud and estoppel claims.

**{¶19}** J&B filed objections to the magistrate's decision which the trial court overruled, adopting the magistrate's decision in its entirety, and entering judgment for Miller on J&B's amended complaint.

**Discovery Orders**

{¶20} For ease of analysis, J&B's seven assignments of error will be addressed out of order and will be grouped together by subject matter. In its fourth and fifth assignments of error, J&B contends:

{¶21} "The trial court erred in issuing a stay of full discovery which would establish the reasonableness of the mutual non-compete clause which each sought to enforce by injunctive relief in the respective pleadings."

{¶22} "The trial court erred by terminating pre-trial discovery regarding fundamental issues in the litigation based solely upon an affirmative defense in order to expedite the conclusion of the case."

{¶23} J&B specifically takes issue with two magistrate's orders, one dated March 18, 2009 and the other March 27, 2009. Substantively, both orders are the same in that they granted both parties leave to amend pleadings and file motions for summary judgment. Both orders include the following language:

{¶24} "Pending a decision on the motion for summary judgment, discovery herein is stayed, except that discovery relating to the following:

{¶25} "1.) Defendant's affirmative defense of discharge in bankruptcy.

{¶26} "2.) Plaintiff's contention that a contract between the parties existed after the bankruptcy;

{¶27} "3.) Violations of this Court's previous Order."

{¶28} The only changes to the March 27, 2009 order (which was labeled "Amended Magistrate's Order") involved correcting typographical errors regarding dates and party names (i.e., changing "plaintiff" to "defendant.")

{¶29} J&B argues these orders prevented further discovery regarding the reasonableness of the non-compete clause, and the limited scope contravenes the Civil Rules, which provide for liberal discovery on "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Civ.R. 26(B)(1). Miller counters that J&B waived these arguments by failing to oppose the discovery orders at the proper time in the trial court.

**{¶30}** Magistrates have the authority to enter orders without judicial approval "if necessary to regulate the proceedings and if not dispositive of a claim or defense of a party." Civ.R. 53(D)(2)(a)(i). Orders regulating discovery, such as the ones at issue here, clearly fall under the purview of this rule. See, e.g., *Crawford v. Hawes*, 2d Dist. No. 23209, 2010-Ohio-952, at ¶25. See, also, Staff Notes to 2006 Amendments to Civ.R. 53(D). Subpart (2)(b) specifies the procedure for setting aside a magistrate's order:

**{¶31}** "Any party may file a motion with the court to set aside a magistrate's order. The motion shall state the moving party's reasons with particularity and shall be filed not later than ten days after the magistrate's order is filed. The pendency of a motion to set aside does not stay the effectiveness of the magistrate's order, though the magistrate or the court may by order stay the effectiveness of a magistrate's order."

**{¶32}** If a party does not move to set aside a magistrate's order, that party waives a challenge to that order on appeal. *Nettle v. Nettle*, 9th Dist. No. 25001, 2010-Ohio-4638, at ¶13, citing *Crawford*, supra. See, also, *Spier v. Spier*, 7th Dist. No. 05 MA 26, 2006-Ohio-1289, at ¶55-57 (discussing a prior version of Civ.R. 53(D)(2)(b)). J&B never filed a motion to set aside either of the magistrate's discovery orders, and is precluded from raising the issue on appeal.

**{¶33}** Moreover, J&B never moved for additional time to complete discovery pursuant to Civ.R. 56(F). The remedy for a party who must respond to a summary judgment motion before he or she has completed adequate discovery is a motion under Civ.R. 56(F). *Carbone v. Austintown Surgery Ctr., L.L.C.*, 7th Dist. No. 09 MA 35, 2010-Ohio-1314, at ¶30. Importantly, "an appellant who failed to seek relief under Civ.R. 56(F) in the trial court has not preserved his rights thereto for purposes of appeal." *Petty v. Mahoning Women's Centre, Inc.* (Feb. 15, 1995), 7th Dist. No. 93 C.A. 32, at *3-4, quoting *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 523 N.E.2d 902, at paragraph four of the syllabus.

**{¶34}** Civ.R. 56(F) permits "a party the opportunity to request additional time to obtain, through discovery, the facts necessary to adequately oppose a motion for summary judgment." *Morantz v. Ortiz,* 10th Dist. No. 07AP-597, 2008-Ohio-1046, at ¶20.

"A party seeking a Civ.R. 56(F) continuance has the burden of establishing a factual basis and reasons why the party cannot present sufficient documentary evidence without a continuance." *Shirdon v. Houston*, 2d Dist. No. 21529, 2006-Ohio-4521, at ¶10; see, also, *Beegle v. Amin*, 156 Ohio App.3d 533, 2004-Ohio-1579, 806 N.E.2d 1045, at ¶8 (Seventh District). Pursuant to the language of Civ.R. 56(F), this factual basis must be set forth in an affidavit. Civ.R. 56(F). Such affidavits are made by the movant or his or her counsel. See, e.g., *Reywal Co. Ltd. Partnership v. Dublin*, 188 Ohio App.3d 1, 2010-Ohio-3013, 933 N.E.2d 1164 at ¶58-59, *Shirdon* at ¶11. The affidavit must explain the need for additional discovery and what such discovery would be likely to uncover. Id.

{¶35} J&B argues that Exhibit F of its Brief in Opposition to Summary Judgment, an affidavit from diDonato, was its attempt to comply with Civ.R. 56(F). However, diDonato's affidavit failed to mention what additional discovery would have been beneficial to the case. Rather, it was offered pursuant to Civ.R. 56(C) as substantive evidence in opposition to the summary judgment motion. Accordingly, J&B failed to utilize Civ.R. 56(F).

{¶36} Because J&B failed to move to set aside the magistrate's discovery orders, and because it failed to avail itself of the procedures contained in Civ.R. 56(F), J&B is precluded from challenging the discovery orders on appeal, or from asserting that the trial court prematurely granted summary judgment prior to the completion of full discovery. Accordingly, J&B's fourth and fifth assignments of error are meritless.

### Summary Judgment due to Bankruptcy Discharge

{¶37} J&B's first, second and third assignments of error assert:

{¶38} "The trial court erred in granting summary judgment based upon Appellee's certification of discharge in bankruptcy because there continues to exist a genuine issue of fact as to the effectiveness of said discharge to the Appellee/Defendant's indebtedness to this Appellant."

{¶39} "Plaintiff/Appellant's claims for relief are not barred by Appellee's 2003 bankruptcy discharge since Appellee counterclaimed for breach and injunctive relief thereby waiving the effectiveness of this affirmative defense."

{¶40} "The trial court erred in that J&B's claim for injunctive relief is equitable and thus a separate and distinct remedy under the contract which is not barred by the Appellee's 2003 bankruptcy even if shown to be effective."

{¶41} An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, at ¶5. A motion for summary judgment is properly granted if the court, viewing the evidence in a light most favorable to the party against whom the motion is made, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to a judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, at ¶10. Only the substantive law applicable to a case will identify what constitutes a material issue, and only the disagreements "over facts that might affect the outcome of the suit under the governing law" will prevent summary judgment. *Byrd* at ¶12, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. "[T]he moving for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. Id. at 293.

### Effectiveness of Bankruptcy Discharge

{¶42} J&B argues that summary judgment was improper because there is a genuine issue of material fact regarding the effectiveness of the bankruptcy discharge with respect to J&B's contract-based claims. Specifically, J&B argues that Miller's debts are excepted from the bankruptcy discharge because they were fraudulently incurred. Miller counters that this argument has been waived because J&B failed to raise it in its brief in opposition to Miller's motion for summary judgment.

{¶43} J&B never argued that Miller's debts were excepted from the bankruptcy discharge due to Miller's alleged fraud. However, as Miller concedes, J&B did argue, both in its brief in opposition to summary judgment and its objections to the magistrate's decision, that there were genuine issues of material fact remaining regarding J&B's separate fraud claim against Miller. These issues, whether the debts are excepted from bankruptcy due to fraud, and whether there are genuine issue of material fact regarding J&B's fraud claim, are similar and turn on the same set of facts; whether the fact that Miller failed to tell J&B about the bankruptcy and continued to comply with the contract post-discharge constitutes fraud. Thus, this issue was not waived.

{¶44} The Bankruptcy Code, defines a debt as a "liability on a claim." Section 101(12), Title 11, U.S.Code. The term "claim" is defined broadly under section 101(5) as:

{¶45} "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

{¶46} "(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." Section 101(5), Title 11, U.S.Code.

{¶47} The United States Supreme Court held a "right to payment" means "nothing more nor less than an enforceable obligation * * *." *FCC v. NextWave Personal Communications, Inc.* (2003), 537 U.S. 293, 303, 123 S.Ct. 832, 154 L.Ed.2d 863

{¶48} A creditor is defined as, inter alia, an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" Section 101(10)(A), Title 11, U.S.Code.

{¶49} A discharge in bankruptcy under Section 727(a), Title 11, U.S.Code "discharges the debtor from all debts that arose before the date of the order of relief." Section 727(b), Title 11, U.S.Code. When dealing with a contract-based claim, the claim "arises on the day the agreement is signed by the parties." *In re May* (Bankr.Ct.S.D.Ohio.1992), 141 B.R. 940, 944. Thus, the "right to payment, although

contingent as to a future breach, arises when the parties enter into the [ ] contract." Id.

{¶50} There are statutory exceptions to discharge listed in Section 523, Title 11, U.S.Code. At issue is the fraud exception found in section 523(a)(2)(A), which provides in pertinent part:

{¶51} "(a) A discharge under section 727, * * * of this title does not discharge an individual debtor from any debt--

{¶52} "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

{¶53} "(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"

{¶54} To establish a prima facie case under Section 523(a)(2)(A), the creditor must demonstrate that: "(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." (Internal footnote omitted) *In re Salupo* (Bankr.Ct.N.D.Ohio.2008), 386 B.R. 659, 665.

{¶55} There is nothing in the record demonstrating that Miller made a material misrepresentation to J&B, either prior to or after entering into, the Agreement. To the contrary, Miller averred that he told J&B's owner about his divorce, resulting financial downturn and that he planned to file bankruptcy. J&B's president diDonato admitted: "Miller did inform me that he was or would be seeking a divorce and that he had debts. He expressed that he may have to file bankruptcy to rid himself of marital and personal debts." Thus, the uncontroverted evidence establishes that J&B had full knowledge of Miller's shaky financial circumstances.

{¶56} J&B cites to O*hio Finance Co. v. Greathouse* (1947), 64 Ohio Law Abs. 1, 110 N.E.2d 805, which is factually distinguishable. In *Ohio Finance,* the creditor presented evidence that the debtor submitted a written credit application that contained materially false information about the debtor's financial condition, which was relied upon

by the creditor in lending money to the debtor. This court concluded the creditor had thus proven the debt was fraudulently incurred, thereby rebutting the debtor's assertion of the bankruptcy discharge defense. Id. at 808. By contrast, J&B has failed to rebut the presumption of an effective discharge as it has presented no evidence that Miller made misrepresentations to J&B prior to entering into the Agreement.

{¶57} That Miller failed to list J&B as a creditor in his bankruptcy does not constitute fraud either. The failure to list a debt in a no-asset Chapter 7 bankruptcy petition does not affect its dischargeability. *In re Madaj* (C.A.6, 1998), 149 F.3d 467, 469-470 (holding that unscheduled debt owed by Chapter 7 debtors was discharged in no-asset case, even though creditors did not learn of case until after entry of discharge order and noting that the law in this area is "counter-intuitive.") Moreover, "a debt is either fraudulent or not depending on the debtor's actions and intent in incurring the debt in the first instance. An otherwise innocently incurred debt * * * does not suddenly become a fraudulently incurred debt when the debtor fails to list it." Id. at 471 (parenthetical example omitted).

{¶58} Finally, Miller's failure to notify J&B after-the-fact about the discharge and its legal effect on the parties' contract does not constitute fraud. A party may voluntarily comply with an obligation after a bankruptcy discharge. Section 524(f), Title 11, U.S.Code. Absent a reaffirmation agreement that complies with the requirements of Section 524(c), Title 11, U.S.Code, such voluntary compliance does not create a new enforceable obligation. *In re Whitmer*, (Bankr.Ct.S.D.Ohio.1992), 142 B.R. 811, 815. See, also, *Rogers v. Huntington Natl. Bank*, 12th Dist. No. CA2004-03-005, 2004-Ohio-7045, at ¶21, citing *In re Turner* (C.A.7, 1998), 156 F.3d 713, 718 ("A reaffirmation agreement is the only means by which a debtor's dischargeable personal liability on a debt may survive a Chapter 7 discharge.") There is no reaffirmation agreement between the parties in the record.

{¶59} A Chapter 7 no-asset debtor does not have the duty to notify his creditors of a discharge and its legal ramifications. *In re Madaj*, supra. Further, J&B was, at the very least, on notice that Miller might file bankruptcy and could have consulted counsel as to

the legal effect of a bankruptcy discharge, and therefore J&B cannot prove justifiable reliance. Accordingly, J&B's first assignment of error is meritless.

## Waiver of Bankruptcy Discharge Defense

{¶60} First, J&B argues Miller waived his bankruptcy discharge defense by counterclaiming for breach of contract and injunctive relief. In other words, Miller cannot assert that J&B's claims for breach of the Agreement and injunctive relief were discharged in bankruptcy while at the same time claiming J&B breached the Agreement. Miller counters that this argument has been waived on appeal for failure to raise it in J&B's objections to the magistrate's decision.

{¶61} Civ.R. 53(D)(3)(b) provides in pertinent part:

{¶62} *"(ii) Specificity of objection.* An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection. * * *

{¶63} *(iv) Waiver of right to assign adoption by court as error on appeal.* Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."

{¶64} A careful reading of the objections reveals that J&B did not argue that Miller waived the bankruptcy discharge defense vis-a-vis his counterclaim for breach and injunctive relief.

{¶65} Thus, J&B waives review of this argument on appeal absent a showing of plain error. Civ.R. 53(D)(3)(b)(iv); *Chalker v. Steiner*, 7th Dist. No. 08 MA 137, 2009-Ohio-6533, at ¶39-40. The civil plain error standard is stringent and rarely utilized, reserved for the "extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, at 816 N.E.2d 1049, at ¶43, quoting *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus.

{¶66} The trial court did not err, let alone commit plain error. Miller did not waive the bankruptcy discharge defense vis-a-vis his counterclaim for breach of contract and injunctive relief because Civ.R. 8 allows for pleading in the alternative:

{¶67} "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds. All statements shall be made subject to the obligations set forth in Rule 11." Civ.R. 8(E)(2).

{¶68} Thus, a party may raise counterclaims that are inconsistent with defenses. The fact that Miller counterclaimed for breach of the Agreement, while simultaneously asserting that J&B's claim for breach of the Agreement was discharged in bankruptcy does not mean that Miller waived the bankruptcy discharge defense. See, e.g., *CommuniCare, Inc. v. Wood Cty. Bd. of Commrs.* 161 Ohio App.3d 84, 2005-Ohio-2348, 829 N.E.2d 706, at ¶21 (concluding that neither the timing of the pleading of a defense nor the existence of claims potentially inconsistent with that defense compelled a finding of waiver since alternative pleading is permitted under Civ.R. 8(E)(2).) Accordingly, this argument under J&B's second assignment of error is meritless.

### Estoppel of Bankruptcy Discharge Defense

{¶69} J&B next argues that summary judgment was improper because either promissory or equitable estoppel applies to prevent Miller from asserting the bankruptcy discharge defense. Miller counters that J&B waived this argument by failing to raise it in its brief in opposition to the motion for summary judgment, or in its objections to the magistrate's decision.

{¶70} J&B did amend its complaint to include a "claim" for estoppel, after Miller amended his answer to include the bankruptcy discharge defense. J&B did not specify which type of estoppel or how it was to be employed. However, in the language of the

amended complaint below, J&B was alleging equitable estoppel and using it defensively; not as a separate cause of action but rather as a tool to prevent Miller's use of the bankruptcy discharge defense. See, e.g., *Merriner v. Goddard*, 7th Dist. No. 08-MO-2, 2009-Ohio-3253, at ¶98 (noting that under Ohio law equitable estoppel doctrine may be employed to prohibit the inequitable use of a defense.)

**{¶71}** Count Four, entitled "Estoppel" states in relevant part:

**{¶72}** "30. MILLER, at all material times alleged in Count One, Count Two and Count Three, has materially, economically and commercially gained an advantage against J&B competing in the restrictive market place as set forth in the AGREEMENT.

**{¶73}** "31. For over five (5) years MILLER has mislead, [sic] induced, encouraged and fraudulently misrepresented to J&B the AGREEMENT was in full force and effect and MILLER received all the benefits that derived therefrom.

**{¶74}** "32. MILLER should be estopped from repudiating the AGREEMENT after five (5) years of receiving the benefits therefrom to the detriment of J&B.

**{¶75}** "33. MILLER should be estopped from alleging a discharge in bankruptcy after having received all the benefits of the AGREEMENT."

**{¶76}** Notably, in its brief in opposition to Miller's motion for summary judgment, J&B did not argue that Miller should be equitably estopped from asserting the bankruptcy discharge defense. And in its objections, J&B merely made a blanket statement that its "fraud and estoppel claims raise genuine issues of material fact." J&B neither explained specifically what facts were in dispute nor argued that Miller should be equitably estopped from asserting the bankruptcy defense. Thus, J&B waived its estoppel argument on appeal and we are constrained to review for plain error only.

**{¶77}** "'A prima facie case for equitable estoppel requires a plaintiff to prove four elements: (1) that the defendant made a factual misrepresentation; (2) that it is misleading; (3) [that it induced] actual reliance which is reasonable and in good faith; and (4) [that the reliance caused] detriment to the relying party.' " *Helman v. EPL Prolong, Inc.* (2000), 139 Ohio App.3d 231, 246, 743 N.E.2d 484 (Seventh District), quoting *Doe v. Blue Cross/Blue Shield of Ohio* (1992), 79 Ohio App.3d 369, 379, 607 N.E.2d 492.

**{¶78}** However, as this court explained in *Merriner,* supra at ¶98, where equitable estoppel is applied defensively, it is better explained via the related concept of waiver by estoppel:

**{¶79}** "Waiver by estoppel '"exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it."' *National City Bank v. Rini,* 162 Ohio App.3d 662, 2005-Ohio-4041, 834 N.E.2d 836, at ¶24, citing *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust,* 156 Ohio App.3d 65, 2004-Ohio-411, 804 N.E.2d 979, at ¶57. 'Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights.' Id." *Merriner* at ¶99.

**{¶80}** Miller is not equitably estopped from asserting the bankruptcy discharge defense. As discussed, supra, a party may voluntarily comply with its obligations under a discharged contract, but absent a reaffirmation agreement, that compliance does not create a new enforceable obligation. Sections 524(c),(f), Title 11, U.S.Code. *In re Whitmer*, supra, 142 B.R. at 815.

**{¶81}** Moreover, Miller did not misrepresent his financial situation to J&B. To the contrary, diDonato admitted he knew about Miller's financial problems, including the possibility of a bankruptcy filing. diDonato chose not to take any action on this knowledge, such as consult legal counsel regarding the potential ramifications. Rather, he stated he considered this Miller's "personal business." Miller did not mislead J&B to its prejudice by continuing to comply with the contract post-discharge. Therefore, the trial court did not commit error, let alone plain error.

**{¶82}** Regarding, J&B's promissory estoppel argument which was never raised in the trial court, this "is a quasi-contractual concept where a court in equity seeks to prevent injustice by effectively creating a contract where none existed by supplying the element of consideration when necessary. The device is not available to override the terms of an express contract where one exists." *TLC Healthcare Servs., L.L.C. v. Enhanced Billing Servs., L.L.C.*, 6th Dist. No. L-08-1121, 2008-Ohio-4285, at ¶24, citing *Telxon Corp. v. Smart Media of Delaware, Inc.,* 9th Dist. No. 22098, 2005-Ohio-4931, ¶58. Here there is

no question that the parties had an express contract. Therefore, promissory estoppel does not apply to this case. Accordingly, this argument under J&B's second assignment of error is meritless.

### Bankruptcy Discharge of Claim for Injunctive Relief

{¶83} J&B next argues that the trial court erred by determining that its claim for injunctive relief was barred by the bankruptcy discharge, because it is separate from the claim for damages and therefore survives the discharge. Again, Miller counters this argument has been waived. Because this argument was not raised in the objections to the magistrate's decision, it is reviewable for plain error only.

{¶84} The trial court's decision regarding the dischargeability of the injunctive relief was erroneous. As aforementioned, a "claim" is defined by the Bankruptcy Code as, inter alia, the "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." Section 101(5)(B), Title 11, U.S.Code.

{¶85} In *Ohio v. Kovacs*, 469 U.S. 274, 105, S.Ct. 705, 83 L.E.2d 649, the United States Supreme Court addressed the issue of whether a state-court injunction ordering the clean-up of an environmental site was discharged under section 101(5)(B). The state court had appointed a receiver to take possession of the property. While cleanup was underway the debtor filed bankruptcy. The Supreme Court held that because the injunctive relief requested necessarily gave rise to a payment of money, the clean up costs, it was a claim dischargeable in bankruptcy. Id. at 283.

{¶86} In *U.S. v. Whizco, Inc.* (C.A.6, 1988), 841 F.2d 147, the Sixth Circuit, relying on *Kovacs*, held that a coal mine operator's Chapter 7 bankruptcy discharged the operator's obligation to reclaim a mine site to the extent that fulfilling the obligation to reclaim the site would force the operator to spend money, but to the extent the operator could comply without spending money, the operator's obligation to comply was not discharged. Id. at 150-151.

{¶87} Building on this law, the Sixth Circuit *Kennedy v. Medicap Pharmacies,*

*Inc.* (C.A.6, 2001), 267 F.3d 493 held that a creditor's right to an injunction for breach of a covenant not to compete was not a claim dischargeable in bankruptcy.

**{¶88}** "In this case, compliance with an injunction would not require the expenditure of money. The Kennedys would simply be required to cease operating the pharmacy in violation of the franchise agreement. Looking at the substance of the equitable relief sought, it is clear that Medicap was not seeking the payment of money. Medicap's right to equitable relief does not, therefore, equate to being a claim.

**{¶89}** "Nor is the requested injunction an alternative to the right of payment. The Medicap franchise agreement is governed by Iowa law. Iowa law, therefore, determines the nature of Medicap's remedies arising from the Kennedys' breach. See *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Under Iowa law, damages may be awarded in addition to an injunction for breach of a covenant not to compete. An injunction, however, is designed to avoid irreparable injury and may issue only when the party seeking it has no adequate remedy at law. *Presto-X-Company v. Ewing*, 442 N.W.2d 85, 89 (Iowa 1989)." *Kennedy* at 497-498.

**{¶90}** Similarly, Ohio law allows for the award of damages in addition to an injunction for breach of a covenant not to compete. See, e.g., *Mesarvey, Russell & Co. v. Boyer* (July 30, 1992), 10th Dist. No. 91AP-974 at *5 ("Equitable relief and damages are not necessarily mutually exclusive remedies. But, where damages will adequately compensate an injured party for a harm suffered, equitable relief is not appropriate.")

**{¶91}** J&B's request for an injunction "barring Miller from engaging in acts prohibited by the Agreement," is not a claim that was discharged by the bankruptcy. Looking to the "substance of the equitable relief sought" the injunction itself does not require the payment of money.

**{¶92}** The trial court's analysis focused on whether J&B's amended complaint also sought damages for breach of the non-compete in concluding the claim for injunctive relief was discharged. The proper perspective is whether the result of granting the injunction itself necessarily causes the debtor to incur costs, not whether there is also a separate claim for damages. Thus, the trial court erroneously concluded that the claim

for injunctive relief was discharged in the bankruptcy, However, this does not rise to the level of plain error. Rather, this actually constitutes harmless error, in light of the trial court's alternative determination that the non-compete clause was unreasonable and therefore unenforceable.

{¶93} "A non-compete clause prohibits a former employee from working in competition with his former employer and amounts to a restraint of trade, so these clauses will be enforced only to the extent that the restraints imposed are reasonably necessary to protect the employer's legitimate business interests. *Brentlinger Enterprises v. Curran* (2001), 141 Ohio App.3d 640, 645, citing *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 25-26. 'A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public.' *Raimonde* at paragraph two of the syllabus. The factors to consider when deciding whether a noncompete clause is reasonable include: 1) the absence or presence of limitations as to time and space, 2) whether the employee represents the sole contact with the customer, 3) whether the employee is possessed with confidential information or trade secrets, 4) whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition, 5) whether the covenant seeks to stifle the inherent skill and experience of the employee, 6) whether the benefit to the employer is disproportional to the detriment to the employee, 7) whether the covenant operates as a bar to the employee's sole means of support, 8) whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment, and 9) whether the forbidden employment is merely incidental to the main employment. Id. at 25." *Alan v. Andrews*, 7th Dist. No. 06 MA 151, 2007-Ohio-2608, at ¶40.

{¶94} Although the agreement between Miller and J&B is not the typical employer-employee non-competition agreement as it involves a post-employment contract, the *Raimonde* factors still apply. See, e.g., *Century Business Servs., Inc. v. Urban*, 179 Ohio App.3d 111, 2008-Ohio-5744, 900 N.E.2d 1048, at ¶25 (applying

*Raimonde* to non-compete agreement entered into simultaneously with the sale of a business).

**{¶95}** The burden is on the former employer to prove the restraint is reasonable and the agreement is valid. *Gen. Medicine, P.C. v. Manolache*, 8th Dist. No. 88809, 2007-Ohio-4169, at ¶8. While Miller came forward with evidence and arguments why the clause was unreasonable, J&B presented no evidence in support of the clause and did not rebut the arguments Miller made in his motion for summary judgment. Instead, J&B chose to argue that it was unable to complete discovery on this issue. However, as discussed earlier, J&B did not move to set aside the magistrate's orders limiting discovery, nor did it avail itself of the procedures contained in Civ.R. 56(F). Thus, the trial court properly made a determination regarding the reasonableness of the non-compete based upon the evidence it had before it.

**{¶96}** Further, the court correctly determined the non-compete is unreasonable and therefore unenforceable based on the *Raimonde* factors. First, there are significant time and place restrictions in the non-compete. It prohibits Miller from competing with J&B for the 20 year term of the Agreement, plus 20 additional years thereafter. It also prohibits Miller from competing in 56 of Ohio's 88 counties while prohibiting J&B from competing only in Franklin County, except for some existing accounts. Notably, Miller was prohibited from competing in Stark, his county of residence, and all contiguous counties. Further, the non-compete seeks to eliminate ordinary competition, and stifle Miller's sales and marketing skills and experience, much of which Miller had developed prior to his employment with J&B.

**{¶97}** Moreover, the benefit to J&B is grossly disproportionate to the benefit to Miller. J&B asserts the non-compete should be enforced because the parties bargained for it and because Miller received valuable consideration in the form of a line of credit to support his fledgling business. This argument fails considering: (1) the line of credit was secured by Miller's "funded account," the retainage held by J&B from Miller's sales commissions when Miller was employed as a J&B sales agent; and (2) the parties' relatively unequal bargaining power. Finally, the non-compete operates as a bar to

Miller's sole means of support, which is his sales business.

{¶98}    Although the trial court incorrectly concluded that the claim for injunctive relief was discharged in bankruptcy, that determination does not rise to the level of plain error.    Rather, this constitutes harmless error in light of the trial court's correct determination that the non-compete was unreasonable and therefore unenforceable. Accordingly, J&B's third assignment of error is meritless.

### Fraud

{¶99}    J&B's sixth and seventh assignments of error assert:

{¶100}   "The trial court erred in granting summary judgment on the fraud claim and incidental issues thereto based upon disputed affidavit testimony which turned on credibility."

{¶101}   "The trial court erred in granting summary judgment because even though pleadings may be vague Appellee Miller has notice of the matters of which J&B complains and strict application of rule requiring pleading of fraud with particularity could service no useful purpose."

{¶102}   Civ.R. 9(B) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The elements of a fraud claim are: "(1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance." *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, at ¶27, citing *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 73, 23 OBR 200, 491 N.E.2d 1101.

{¶103}   Turning first to the specificity of J&B's fraud claim, as Miller points out, the trial court's adverse ruling on J&B's fraud claim was on the merits, not for a lack of specificity as required by Civ.R. 9.  Second, to the extent J&B focuses on the fact that it was not allowed to complete discovery on this claim, as discussed in assignment of error

six, J&B is precluded from challenging the magistrate's discovery orders or arguing that summary judgment was premature because it failed to object to those orders and follow the procedures in Civ.R. 56(F).

{¶104} Turning to the merits, the trial court correctly granted summary judgment on the fraud claim. There is nothing in the record demonstrating that Miller made a material misrepresentation to J&B, either prior to or after entering into, the Agreement. Rather, Miller averred that he told J&B's owner about his divorce, resulting financial downturn and that he planned to file bankruptcy. diDonato admitted that Miller had informed him he was or would be seeking a divorce, that he had debts, and that he may file bankruptcy. Moreover, as discussed above, the fact that Miller failed to list J&B as a creditor in his bankruptcy does not constitute fraud. See *In re Madaj* at 471. Finally, Miller's failure to notify J&B after-the-fact about the discharge and its legal effect on the parties' contract does not constitute fraud. A party may voluntarily comply with its obligations under a discharged contract, but that compliance does not create a new enforceable obligation. J&B was, at the very least, on notice that Miller might file bankruptcy and could have consulted counsel as to the legal effect of a bankruptcy discharge. Because J&B cannot prove justifiable reliance, J&B's sixth and seventh assignments of error are meritless.

{¶105} In conclusion, J&B's assignments of error are meritless. Many of J&B's arguments were not raised at the proper time in the trial court and are therefore waived absent plain error. First, because J&B failed to move to set aside the magistrate's discovery orders, and because it failed to avail itself of the procedures contained in Civ.R. 56(F), J&B is precluded from challenging the discovery orders on appeal, or from asserting that the trial court prematurely granted summary judgment prior to the completion of full discovery. Further, Miller's debts were not "fraudulently incurred" and therefore they can be excepted from the bankruptcy discharge for that reason. Miller did not waive his bankruptcy discharge defense by counterclaiming for breach of contract and injunctive relief. Neither promissory nor equitable estoppel applies to this case. And although the trial court erred by concluding the claim for injunctive relief was discharged

in bankruptcy, it does not rise to the level of plain error. Rather, this error was harmless in light of the trial court's correct conclusion that the non-compete clause was unreasonable and therefore unenforceable. Finally, the trial court properly granted summary judgment on J&B's fraud claim. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.