[Cite as *Yuckman v. Ohio Univ.-Lancaster*, 2011-Ohio-7047.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

PAUL YUCKMAN, PH.D.

 Plaintiff

 v.

OHIO UNIVERSITY-LANCASTER

 Defendant

Case No. 2009-08136

Judge Clark B. Weaver Sr.
Magistrate Lewis F. Pettigrew

## MAGISTRATE DECISION

{¶1} Plaintiff brings this action against defendant, Ohio University (OU), alleging claims for breach of contract, specific performance, promissory estoppel, and declaratory relief.

{¶2} Plaintiff was employed by OU as a professor for approximately 35 years and he taught both at OU's main campus in Athens, Ohio and at its Lancaster branch (OU-L). Plaintiff entered into an Early Retirement Agreement (Complaint, Exhibit A) with OU in 2006. Under the terms of the agreement, plaintiff was permitted to retire from his full-time teaching position and receive a retirement benefit yet continue teaching until he reached the age of 70. The agreement incorporates within its terms the OU Early Retirement Policy (ERP). (Complaint, Exhibit B.)

{¶3} In July of both 2006 and 2007, plaintiff received a letter from OU President, Roderick Davis, reappointing him as an Associate Professor, English, with "early retirement quarterly pay" of $27,113 and 27,926 respectively. In the 2006-2007 and 2007-2008 academic years, plaintiff taught courses at OU-L Pickerington campus.

{¶4} Plaintiff did not teach in the fall quarter of academic year 2008-2009. On October 2, 2008, plaintiff informed John Furlow, Dean of OU-L, that he could not teach during the winter quarter of that year but that he was still interested in continuing to teach. In the correspondence, plaintiff requested that his name not be removed from the roster for future teaching opportunities. However, on or about April 8, 2009, Dean Furlow notified plaintiff that his Early Retirement Agreement with OU had been terminated based upon his failure to teach at least one quarter for that academic year.

{¶5} Plaintiff alleges that defendant violated his rights under the ERP and the parties' agreement. Defendant argues that pursuant to the plain language of both the agreement and the ERP, plaintiff promised to teach full-time for one quarter each year until he reached the age of 70 in exchange for OU's promise to pay plaintiff one-third of his regular nine-month salary each year until he reached age 70. Plaintiff believed that he was under no obligation to teach during the term of the agreement, but that if he chose to do so, he could teach no more than one quarter, or its equivalent, per year. In the alternative, plaintiff argues that even if he was obligated to teach at least one quarter per year, defendant failed or refused to offer him an acceptable teaching opportunity in the 2008-2009 academic year. Although plaintiff admits that he elected not to teach in the fall, and that he notified OU that he could not teach during winter quarter, he claims that he was never given the opportunity to teach in the spring quarter.

{¶6} The relevant portions of the Early Retirement Agreement provide that:

{¶7} "This Early Retirement Agreement * * * incorporates * * * the Ohio University Early Retirement Policy. It supplements the policy by specifying the dates and salary for early retirement for a specific faculty member identified above. The Early Retirement Agreement and the Early Retirement Policy contain the entire agreement of the parties * * *.

{¶8} "As determined under the Faculty Handbook Early Retirement Policy (Section III.R), I agree to teach full time one quarter (or its equivalent) each year until

age 70, each year's term being determined after discussion with the academic department head and after due consideration of the needs of the department.

{¶9} "I understand that I have no contractual right to continue part time teaching or resume teaching full time after age 70 years. * * *

{¶10} "The salary * * * will be one-third of the base academic year salary plus a percentage increase determined in accordance with the Early Retirement Policy."

{¶11} The relevant portions of the ERP are as follows:

{¶12} "1)  General:  A tenured faculty member eligible for retirement under the STRS and wishing to continue to teach part-time may elect to do so under the early retirement policy. In this event, an Early Retirement Agreement is signed by the faculty member, department head, dean, and Provost. * * * The Early Retirement Agreement remains in effect as long as the faculty member wishes to continue part-time teaching and has not reached 70 years of age * * *.

{¶13} "2)  Teaching: During early retirement, the faculty member will be permitted to teach the equivalent of one quarter each academic year.  The term (Fall, Winter, or Spring) to be taught each year will be determined by the faculty member after discussion with his/her academic department head and after consideration of the needs of the department."  (Plaintiff's Exhibit 2.)

{¶14} Ordinarily, the presence of an integration clause in a written contract creates a strong, although not conclusive, presumption that the contract is complete. See *Fontbank, Inc. v. CompuServe, Inc.* (2000), 138 Ohio App.3d 801.  And, "[i]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined."  *Inland Refuse Transfer Co. v. Browning-Ferris Ind. of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322.  Where contract terms are clear and unambiguous, the court cannot, in effect, create a new contract by finding an intent not expressed in the clear language employed by the parties.  *Brandon/Wiant Co. v. Teamor* (1998), 125 Ohio App.3d 442, 447.

{¶15} In denying defendant's pretrial motion to dismiss, the court stated: "Upon review of the documents, the court finds that * * * the Early Retirement Agreement clearly states that the faculty member agrees to teach full-time for one quarter each year until the age of 70 * * *."

{¶16} Based upon the evidence admitted at trial, the court finds that plaintiff did not teach any classes in the 2008-2009 academic year. Plaintiff acknowledged that he lived in Indiana during that academic year, and that he did not teach at OU in the fall quarter. On October 2, 2008, plaintiff sent an email to Leigh Atkinson, Director, OU-L Pickerington campus, stating that he could not teach during the winter quarter. Dean Furlow was copied on the email. Plaintiff has also acknowledged that he did not teach in the spring. Although there is a dispute whether the academic year includes the summer quarter, it is stipulated that plaintiff did not teach in the summer quarter.

{¶17} The parties' agreement is clear and unambiguous. Contrary to plaintiff's assertion, the language of the ERP does not conflict with the executed agreement. The language of the policy clarifies the parties' intentions that teaching "full time one quarter (or equivalent) each academic year" is both the minimum required by *and* the maximum permitted by the agreement. Although plaintiff introduced extrinsic evidence at trial which, if believed, would contradict the clear meaning expressed in the agreement, such evidence is unavailing in this case. Indeed, "[t]he parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 440.

{¶18} Defendant contends that the early retirement agreement expired by its own terms at the close of the 2008-2009 academic year inasmuch as plaintiff did not teach during that year. In a letter dated April 8, 2009, Furlow thanked plaintiff for his service to OU and informed plaintiff that "the University's agreement for early retirement with you is terminated." Plaintiff continues to receive his retirement benefit.

{¶19} Plaintiff argues that Furlow's letter violates the revocation clause in the agreement which provides: "To revoke the early retirement agreement and fully retire before age 70, I will communicate that decision to the Provost of Ohio University." However, it is clear that such language applies only where the agreement is terminated at plaintiff's instance, which did not occur in this case.

{¶20} Plaintiff next contends that his failure to teach during the 2008-2009 academic year is legally excusable in light of the fact that OU made no effort to contact plaintiff about teaching opportunities in the spring quarter. In ruling upon defendant's pretrial motion, the court also stated: "it is * * * clear in both the agreement and the OU policy that the decision of which term the faculty member teaches will be made 'after discussion' with the academic department head, and after 'due consideration' of the needs of the department."

{¶21} The agreement is silent, however, as to the relative obligations of the parties regarding such communications. The only evidence of communication between the parties for the 2008-2009 academic year is a series of email messages that were admitted into evidence as Plaintiff's Exhibit 3 and Defendant's Exhibit K. Plaintiff's Exhibit 3 purports to be plaintiff's September 22, 2008 response to an email from Atkinson, the text of which also appears below plaintiff's response. The text of Atkinson's undated email reads:

{¶22} "Hi Paul, Hope all is well! We are getting ready to go to print with the winter schedule, and I wanted to touch base with you and make sure your plans to teach have not changed. Thanks! Leigh."

{¶23} Plaintiff's response reads:

{¶24} "Hi Leigh, Hope all is well with you, too. I will confirm my teaching within the next week (no later than October 1, as per our original conversation). Paul."

{¶25} Both Defendant's Exhibit K and the second page of Plaintiff's Exhibit 3 purport to be the confirmation plaintiff spoke of in his response. The email message reads:

**{¶26}** "Hi Leigh, Just wanted you to know that I will not be available to teach at Pickerington this winter quarter.  I am, however, still interesting [sic] in fulfilling my 1/3 teaching at OU, so do not interpret this as a final 'NO' to OU teaching.  I'm also copying John Furlow on this e-mail so that he does not remove my name from future teaching at OUL-PC.  I'll be in touch shortly to see what other options might be available for teaching.  Hope all is going well with you.  Paul."

**{¶27}** The course of performance convinces the court that the communication process between OU and plaintiff was relatively informal.  Based upon the text of the email messages, the court finds that plaintiff was obligated to follow up with OU regarding a teaching assignment in the spring quarter if it was his desire to teach in that quarter. Plaintiff admitted upon cross-examination that he did not follow up on his representation that he would "be in touch shortly," nor did he otherwise request a teaching assignment for the spring quarter.

**{¶28}** With regard to the summer quarter, defendant argues that the summer quarter is not a part of the academic year.  In fact, the ERP admitted into evidence as Plaintiff's Exhibit 2 speaks only to the fall, winter and spring quarters.  Although plaintiff argues that the termination of the early retirement agreement prevented him from teaching in the summer quarter, the version of the early retirement plan upon which he relies does not count the summer quarter as part of the academic year.[1]  Moreover, plaintiff has not convinced the court that he was willing to teach in the summer quarter.  Rather, plaintiff was under the mistaken impression that his early retirement agreement did not obligate him to teach at all.

---

[1]The ERP admitted into evidence as Defendant's Exhibit A and the copy attached as an exhibit to plaintiff's complaint contain an additional sentence which reads as follows:  "For colleges that include summer quarter as a normal part of the faculty member's annual contract, the faculty member may, after consulting with his/her department head, choose to fulfill his or her obligation during the summer quarter."  On September 23, 2011, plaintiff filed a motion to strike the portion of defendant's brief that cites to this provision.  The motion is DENIED, as moot.

{¶29} To the extent that plaintiff seeks declaratory relief, the court's decision as to plaintiff's contract claim precludes the declaration he seeks.[2]   Similarly, the court's determination that OU had the legal right to terminate the agreement effectively disposes of plaintiff's claim of specific performance.   Finally, promissory estoppel is not available to plaintiff inasmuch as the parties' written agreement governs the disputed subject matter. See *J&B Fleet Ind. Supply, Inc. v. Miller*, Mahoning App. No. 09MA173, 2011-Ohio-3165; *Olympic Holding Co., L.L.C. v. ACE Capital Title Reinsurance Co.*, 122 Ohio St.3d 89, 2009-Ohio-2057.

{¶30} Based upon the foregoing, the court concludes that plaintiff has failed to satisfy his burden of proof as to any of the claims set forth in the complaint. Accordingly, judgment is recommended in favor of defendant.

{¶31} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
LEWIS F. PETTIGREW
Magistrate

cc:

---

[2]Plaintiff seeks a declaration that:  1) the agreement is valid, enforceable, and unambiguous; 2) OU breached the agreement; and 3) the agreement permits but does not require plaintiff to teach one quarter per academic year.

Amy S. Brown
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Daniel J. Fruth
109 North Broad Street, Suite 200
P.O. Box 130
Lancaster, Ohio 43130-0130

LP/dms
Filed December 20, 2011
To S.C. reporter March 20, 2012